## GRIER *v.* BAYNES *et al.*

*(Circuit Court, N. D. New York. February 10, 1892.)*

PATENTS FOR INVENTIONS—CONDITIONAL ASSIGNMENT.
  A patentee granted to a company a license to make, use, and sell the patented articles throughout the United States, and an exclusive license for certain western states, except that he reserved to himself the right to sell in those states, and to transfer that right to one other. Thereafter he executed an assignment to other parties of one-third of his interest in the patent, in which ho, in terms, excepted the rights granted to the company, and also reserved to himself the right to sell in all the remaining states, and to transfer that right to one other; and further reserved to himself the exclusive control "of and over all sales of the right to manufacture, use, and sell" the patented articles, which right he agreed should not be granted or sold at less than a specified price; and he agreed to account to the assignees for one-third of the proceeds of such sales, and that, should he neglect so to account or to pay them their share thereof, his exclusive control over such sales should cease, and the assignment should "thereupon become and be absolute forever." *Held* that, until such default, the assignment was merely conditional, in the nature of a security for the performance by the patentee of his agreement.

In Equity. Suit by William Watson Grier against James B. Baynes and others for royalties under letters patent. On settlement of final decree. See former report, 46 Fed. Rep. 523.

### STATEMENT OF FACTS.

On the 5th of June, 1891, a decision was rendered in favor of the complainant for an accounting. 46 Fed. Rep. 523. On the 24th of June, 1891, an interlocutory decree was entered referring it to Mr. Charles B. Germain, of Buffalo, N. Y., as master to take the accounting and directing him to state "separately the number of sets of springs made and sold by said defendants prior to December 6, 1887, and the number made and sold subsequent to that date." On the 11th day of December, 1891, the master filed his report in which he finds: *First,* that the complainant is entitled to recover $138.60 on account of royalties and $47.50 interest thereon, in all $186.14, against the defendant Baynes for springs made and sold by him. *Second,* that the complainant is entitled to recover $1,896.30 on account of royalties and $527.79 interest thereon, in all $2,424.09, against defendants Baynes and the Buffalo Spring & Gear Company for springs made and sold by them subsequent to and including March 12, 1886, and prior to December 6, 1887. *Third,* that complainant is entitled to recover $12,012.70 on account of royalties and $1,057.36 interest thereon, in all $13,070.06, against the defendants Baynes and the Buffalo Spring & Gear Company for springs made and sold by them from December 5, 1887, to October 1, 1891.

The defendants have filed six exceptions to this report; three disputing the master's findings as to the principal sums found due for royalties and three disputing his allowance of interest thereon. The master was directed to state separately the number of springs sold before and after December 6, 1887, for the reason that on that date the defendants acquired an interest in the patent which it was thought might give them a right to manufacture and sell free from the obligation to pay royalties. At the time the interlocutory decree was settled the court was not fully satisfied upon this point. The question was not discussed at the argument and the defendants' views regarding it have not, until now, been presented to the court. The master was directed to separate the account, so that this court, or an appellate court, might at any time be able to fix the recovery, according to the view taken of the rights acquired by the defendants on December 6, 1887, without the necessity of a new reference.

The contention that the accounting should be limited to a time prior to December 6, 1887, is based upon the assignment to the defendant, the Buffalo Spring & Gear Company, by Victor P. Richardson and Hamilton P. Richardson, on that date, of an alleged one-third interest in the Thomas patent. The Richardson title is founded upon the following instrument:

"Whereas, I, Charles L. Thomas, did obtain letters patent of the United States, for certain improvements in springs for vehicles, which letters patent bear date the 15th day of January, A. D. 1884, and are numbered 292,174; and whereas, Victor P. Richardson and Hamilton P. Richardson, of the city of Janesville, in the state of Wisconsin, are desirous of acquiring an interest therein: Now, therefore, this indenture witnesseth that for and in consideration of the sum of one dollar to me in hand paid, the receipt of which is hereby acknowledged, I have assigned, sold and set over, and do hereby assign, sell and set over unto the said Victor P. Richardson and Hamilton P. Richardson, their representatives and assigns, all of the one-third right, title and interest which I have in the said letters patent, except as to the rights and privileges therein and thereunder this day granted by me to the Thomas Spring and Gear Company, Limited, of the city of Janesville, in the state of Wisconsin, and the money agreed to be paid to me by said corporation, as a consideration for such grant, and also reserving to myself the individual right to manufacture, and to sell, such improved springs for vehicles in all states and territories of the United States where said Thomas Spring and Gear Company, Limited, have not, by virtue of such grant to it, above referred to, the exclusive right so to do; and to assign and transfer such individual right so reserved to myself, to any one individual partnership, company, or corporation only, and no more, and to take, receive and have for my own use and benefit all money paid or agreed to be paid to me as a consideration for such assignment and transfer of such individual right, the same to be held by said Victor P. Richardson and Hamilton P. Richardson for their own use and behoof, and for the use of their and each of their legal representatives and assigns, to the full end and term for which said letters patent are granted as fully and entirely as the same would have been held and enjoyed by me had this assignment and sale not been made, provided, nevertheless, that said Charles L. Thomas shall have and do hereby also retain and reserve to myself the sole and exclusive power and control of and over all sales of the right to manufacture, use or sell such improved springs for vehicles by any and all

persons, individuals, companies and corporations whatsoever; which said right it is hereby understood and agreed shall not be granted or sold at a less price than that of one dollar for each set of such improved springs for vehicles manufactured and sold by the grantee of such right.—And for the consideration aforesaid it is hereby further understood and agreed by me but subject to the exceptions and reservations in my behalf and favor, that I shall and will account to and pay over to them, their legal representatives or assigns for their sole use and benefit all of the one-third part of all money arising from such sales to others of the right to manufacture, use or sell such improved springs for vehicles not hereinbefore excepted or reserved to myself. And at the times and on the days following, namely, on the first day of January, A. D. 1885, and on the first day of April, July, October and January thereafter in each and every year during the term for which such letters patent are granted, but should I at any time refuse or neglect to render such account or to pay to them the money so agreed to be paid for a term of thirty days after the time hereby fixed for such accounting and payment, then, and in such case the aforementioned sole and exclusive power and control over such sales, as well those theretofore made as those thereafter to be made shall cease, and the sale and assignment aforementioned of said one-third right, title and interest in said letters patent to said Richardson and shall thereupon become and be absolute forever thereafter, and the said assignees thereof, their representatives and assigns, be authorized and empowered by action or otherwise to collect and receive any and all sums of money then due or to become due to them on account of any and all sales of rights to manufacture, use or sell such improved springs for vehicles theretofore and thereafter made. In witness whereof I have hereunto set my hand and seal this 16th day of August, A. D. 1884. CHARLES L. THOMAS. [Seal.]"

In its former decision the court said regarding this subject:

"Whether the decree should extend beyond December 6, 1887, is a question which can be determined upon the settlement of the decree. I do not decide it now for the reason that considerations, which seem to me important, were not alluded to upon the argument and are but casually mentioned in the briefs. On the 16th of August, 1884, Thomas, the patentee, assigned to Victor and Hamilton Richardson a one-third interest in the patent in question. The assignment was restricted by many conditions, but it provided that upon the assignor's default in certain particulars, it should become absolute. There is plausibility in the suggestion that it did become absolute and that the Richardsons, in December, 1887, held an unincumbered one-third interest in the patent. On the 6th of December, 1887, they assigned their interest to the Buffalo Company. If the Richardsons had the right to make and sell the patented spring free from all obligations to pay royalty to the complainant, it is clear that when the defendant company purchased their title it acquired the same right."

*James A. Allen,* for complainant.
*Albert H. Walker,* for defendants.

COXE, District Judge. The exceptions to the allowance of royalties accruing prior to December 6, 1887, are not pressed at this time. The exceptions to the master's decision allowing interest on these amounts are overruled for the reasons stated at the argument. The only question to be decided is whether the complainant is entitled to royalties after the defendant, the Buffalo Spring & Gear Company, became invested with the title previously held by the Richardsons. It be-

comes necessary, therefore, to analyze and construe the Richardson agreement. In order to do this properly the situation at the time of its execution must be considered.

The patent to Thomas was granted January 15, 1884. On the 16th of August, 1884, Thomas granted to the Thomas Spring & Gear Company a license to make, use and sell the patented springs throughout the United States and territories and an exclusive license for certain western states; except that he reserved to himself the right to sell in the states covered by the exclusive license and to transfer that right to one individual, partnership or corporation. After this paper was executed and delivered Thomas still owned the patent and all the rights thereunder for that part of the United States lying east of Michigan, Indiana, Illinois, Missouri, Arkansas and Louisiana. On the same day, August 16, 1884, the assignment to the Richardsons was executed. By the terms of this instrument Thomas assigned, sold and set over to the Richardsons, their representatives and assigns, all of the one-third right, title and interest which he had in the patent, the same to be held by them for their own use and behoof and for the use of their representatives and assigns, to the full end and term for which the patent was granted, as fully and entirely as the same would have been held and enjoyed by Thomas had the assignment and sale to the Richardsons not been made. But this grant was subject to certain exceptions, provisos and conditions which qualify language otherwise absolute in its effects.

*First.* The provisions directly following the granting clause were, probably, unnecessary, for they simply do what was already done by operation of law,—make the conveyance to the Richardsons subject to the prior conveyance to the spring and gear company. The Richardsons could not practice the invention in the western states, for that territory was covered by the exclusive license previously granted, and they had no interest in the royalties agreed to be paid to Thomas by the spring and gear company. In other respects, had there been no further exception, they would have possessed the same rights that Thomas possessed; namely, they would have owned one-third of the patent and all the rights thereunder for the eastern states. As to that territory they would have been on equal terms with Thomas.

*Second.* The next qualifying clause is as follows:

"And also reserving to myself the individual right to manufacture, and to sell, such improved springs for vehicles in all states and territories of the United States where said Thomas Spring & Gear Company, Limited, have not, by virtue of such grant to it, above referred to, the exclusive right so to do; and to assign and transfer such individual right so reserved to myself, to any one individual, partnership, company or corporation only, and no more, and to take, receive and have for my own use and benefit all money paid or agreed to be paid to me as a consideration for such assignment and transfer of such individual right."

The learned counsel for the complainant construes this language to mean that there was reserved to Thomas not the individual right, but the exclusive right to manufacture and sell. He insists that "the reserved right to license for the assignor's individual benefit is carved out

of the whole title to the patent." It seems, if this construction is correct, that the instrument becomes a mere *nudum pactum*. If Thomas had the exclusive right for the east and the spring and gear company the same right for the west, it is difficult to see what privilege or advantage the Richardsons could ever obtain. They paid for and received a paper which conveyed nothing of value. Thomas reserved to himself the right to manufacture and sell in the eastern states and to assign that right to one other person, partnership or corporation. Of course this reservation was unnecessary. As owner of two-thirds of the patent he possessed the right already. So did the Richardsons if not deprived of it by subsequent reservations. The reservation to Thomas of one of the rights already his did not deprive the Richardsons of rights already theirs. By reference to the license to the spring and gear company, executed on the same day, it would seem, from the identity of language, that Thomas was apprehensive lest he might have conveyed to the Richardsons the same privilege for the eastern states which he had conveyed to the spring and gear company for the western states and that he desired to reserve the same individual right for the former section that he already possessed for the latter. If this were his intention the language employed was apt and proper. If the object was to deprive the Richardsons of all right to practice the invention it was most inapt. It cannot be construed into a reservation of all valuable rights under the patent in the assignor and a consequent exclusion of the assignees from such rights. Suppose, as complainant's counsel suggests, that the reservation had been by a separate instrument; suppose that on the 15th of August Thomas had conveyed to John Doe "the individual right to manufacture and to sell," etc., employing the exact language quoted; will it be argued that the owner of the patent was precluded from practicing the invention because of the restricted license to John Doe? The owner of the individual right in question, whether he held it by reservation or direct conveyance, was wholly powerless, by virtue of that right alone, to prevent the owner of the patent or of an undivided interest therein, from exercising the full privileges of the monopoly granted by the government. The right retained by Thomas was no more efficacious than the same right would be were it outstanding in John Doe. In each case it was a reserved right, in each case the privileges possessed by its holder were identical. Moreover complainant's construction is at variance with other portions of the instrument which evidently contemplates sales by many licensees. Considerable light may be thrown upon the language in question by comparing it with the language quoted under the next (third) subdivision of this opinion. May it not have been the sole intention of the assignor, in view of his agreement to account to the Richardsons for one-third of the royalties collected, to reserve to himself and to one assignee the right to manufacture and sell free of this obligation? It is, for these reasons, thought that the language quoted leaves the rights of the Richardsons precisely as they were at the conclusion of the granting clause. Had the instrument stopped with the *habendum* it would, then, have been simply an assignment of a one-third interest in

the patent subject to the existing license, the assignor reserving to himself an individual right to manufacture and sell, or to dispose of that right to one other person, keeping the avails of such right as his own individual property.

*Third.* The next paragraph to be considered is the one immediately following the *habendum.* It is as follows:

"Provided nevertheless, that said Charles L. Thomas shall have and do hereby also retain and reserve to myself the sole and exclusive power and control of and over all sales of the right to manufacture, use or sell such improved springs for vehicles by any and all persons, individuals, companies and corporations whatsoever; which said right it is hereby understood and agreed shall not be granted or sold at a less price than that of one dollar for each set of such springs for vehicles manufactured and sold by the grantee of such right.—And for the consideration aforesaid, it is hereby further understood and agreed by me, but subject to the exceptions and reservations in my behalf and favor that I shall and will account to and pay over to them, their legal representatives or assigns for their sole use and benefit all of the one-third part of all money arising from such sales to others of the right to manufacture, use or sell such improved springs for vehicles not hereinbefore excepted or reserved to myself."

This language is certainly perplexing. Precisely what the intention of the parties was it is difficult to conjecture, unaided by other provisions of the instrument. The paragraph, when stripped of verbiage, seems to provide that Thomas should retain the exclusive control over licenses, which were not to be granted for less than one dollar royalty, and that he should pay the Richardsons one-third of the amounts collected. He was not, however, to divide the royalties upon springs manufactured under the individual rights before reserved to him. It is thought that in construing this paragraph sufficient force has not been given to the language following it. It is there expressly provided that should Thomas neglect to pay their share of the royalties to the Richardsons and remain in default for 30 days "then and in such case the aforementioned sole and exclusive power and control over such sales shall cease and the sale and assignment aforementioned of said one-third right, title and interest in said letters patent to said Richardsons shall thereupon become and be absolute forever thereafter." This language cannot be ignored; some construction must be given to it. Is it not fair to assert that if a default for 30 days was necessary to make the assignment absolute, it was not absolute before the default occurred?

The learned counsel for the defendants concedes that there is nothing to show that the default occurred and assumes that it did not occur. It is not disputed either that in order to succeed the defendants must make it appear that there was a complete ownership by the Richardsons of an undivided third of the patent. A reservation of any one of the elements of ownership "would have subtracted from the essential elements of that ownership a part of those elements, and would, by thus excluding the paper from the category of assignments, have consigned it to the category of licenses." Was one-third of the whole estate of the patent conveyed unconditionally to the Richardsons? In

answering the question in the negative I am not unmindful of the ingenious and persuasive argument of the defendants' counsel that Thomas reserved not the ownership of the right to sell licenses but "the power and control" over such sales. This construction would be more plausible if the paragraph stood alone, but when read in connection with other clauses of the same agreement and with the provisions of the contemporaneous agreement with the spring and gear company it is thought that it does not express the true intention of the parties. The paper is not artistically drawn. It is conceded on all sides to be the work of a neophyte in patent law. But if one idea stands out more prominently than another it is the intent of Thomas to retain full power and control over his patent. He might have used language more technical and concise, but when he says that he reserves to himself "the sole and exclusive power and control of and over all sales of the right to manufacture," etc., it is not difficult to perceive that what he intended to do was to prevent the Richardsons from exercising any rights in that regard. He thought that as he had the sole and exclusive power, they had no power at all; that they could not grant licenses without assuming control over them; therefore the granting of licenses would be an invasion of his exclusive right. This construction is borne out by the subsequent provision making the assignment absolute if Thomas failed to pay. Until that default occurred the conveyance was conditional; it was not a full and complete grant; something necessary to make it a complete grant was reserved in the assignor. Is it not clear that what the assignor intended to reserve was the exclusive right to make sales of the right to manufacture, use and sell? So long as he paid the Richardsons he retained that right; when he defaulted the right passed to them. Then the assignment became absolute, but not till then. Until then it was a contingent assignment. As soon as the default occurred Thomas lost his exclusive power over sales and thereafter the Richardsons could sue for and collect the royalties. It is fair to presume that it was the intention of both parties that the Richardsons should not acquire a title which enabled them to maintain such suits prior to a default. I am, therefore, constrained, in the light of all the circumstances surrounding the execution of the instrument in question to hold that it was intended not as an unconditional assignment of a one-third interest in the patent, but more in the nature of security for the performance by Thomas of his agreement; to remain inchoate so long as he performed his duty and to be used the moment he failed in that duty. It follows that the exceptions must be overruled and that the complainant should have a decree for the amount reported by the master, with interest thereon from the date of the master's report, together with costs and disbursements.